Filed 1/31/14  In re D.F. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re D.F., a Person Coming Under the Juvenile Court Law. | C072949 |
| THE PEOPLE, | (Super. Ct. No. 69219) |
| Plaintiff and Respondent, | |
| v. | |
| D.F., | |
| Defendant and Appellant. | |

The minor, D.F., admitted committing first degree burglary, conspiracy to commit burglary, vandalism, possession of burglary tools, and misdemeanor assault.  The juvenile court placed the minor on deferred entry of judgment (DEJ), but subsequently found that the minor violated the terms of his DEJ.  At the dispositional hearing, the

1

juvenile court adjudged the minor a ward of the court and placed him on probation subject to various conditions, including 60 days in juvenile hall with 30 days of credit.

The minor now contends (1) the juvenile court erred in refusing to hold a hearing on whether DEJ should have been revoked, (2) denial of the hearing violated various constitutional provisions, and (3) there is an error in the disposition order.

We conclude (1) the juvenile court held a hearing when it revoked DEJ, (2) the hearing complied with federal and state constitutional provisions, and (3) the disposition order -- the juvenile detention disposition report -- must be corrected.

We will order a correction to the disposition order and affirm the judgment.

BACKGROUND

The minor and an accomplice entered a Stockton home on April 24, 2012, with the intent to commit a theft. The minor helped damage the home's front door and damaged an alarm system and a console in the kitchen. He took electronics, a backpack and over $950 in cash. He was found in possession of a screwdriver and tin snips. The minor also tried to hit a person who lived near the home.

The minor admitted allegations in an amended delinquency petition (Welf. & Inst. Code, § 602) that he committed first degree burglary (Pen. Code, § 459),[1] conspiracy to commit burglary (§ 182, subd. (a)(1)), grand theft (§ 487, subd. (a)), felony vandalism (§ 594, subd. (b)(1)), two counts of possession of burglary tools, a misdemeanor (§ 466), misdemeanor vandalism (§ 594), and misdemeanor assault (§ 240). The juvenile court placed the minor on DEJ.

However, on November 19, 2012, the probation officer filed a request for an order to show cause (OSC) asserting that the minor violated the terms of his DEJ. The request alleged the minor failed to follow curfew, was not performing satisfactorily in school, did

---

[1] Undesignated statutory references are to the Penal Code.

2

not follow the instructions of his parent or school officials, and left his residence without returning on November 2, 2012. The minor had a number of school suspensions. One day, the minor showed up at school while on suspension. The minor also failed to comply with repeated warnings not to violate the school's colors policy. When his disruptive behavior was addressed, the minor announced in the classroom that he would come back and get his revenge if he was kicked out of school.

The minor denied the allegations at the arraignment on December 11, 2012. Minor's counsel asserted that the parents failed to pick the minor up from his aunt's house, and that other family members could be more supportive than his parents. According to counsel, the minor's father was "the one who is causing all the problems." The juvenile court found a prima facie case for violating the DEJ had been established, and temporarily placed the minor with the probation department.

A hearing on the matter was held on December 13, 2012. The minor's father and aunt were present. The juvenile court told the father about allegations from the probation department that he was not willing to take the minor home and did not want him back in the house. According to the father, "we had an incident prior to him being picked up to where he didn't want to do nothing. He's coming and leaving when he wants and stuff." The parents tried to talk to the minor, but stated: "We don't know what the issues are. We don't know what he's going through, but we also have other kids, and like I said, he's coming and going and we don't know what's outside, where he's going, what he's doing. So when he comes home it becomes very irritating. I have other kids. I'm trying to keep them on board. So here we are."

The juvenile court said it would have to do a child protective services (CPS) referral because the minor could not stay in juvenile hall until he was 18. Either another family member or some other home would have to be found for the minor. The father replied, "we are not saying that he can never come home, but right now, I mean, what do

3

we do?" According to father, the minor was not getting any better and not going to school.

The juvenile court had the minor's school records except for the most recent ones, so it was going to order the November school records. When the juvenile court asked the minor for his permission to get his school records, minor's counsel replied that "he's indicating that he wasn't in school during the month of November because they wanted to switch him to Insight, but he needed to go with his parents to the school to get him switched over to Insight. So you can -- I don't think he has a problem with you getting those records. He just wanted you to know that that's what they're going to say."

When the juvenile court asked the father whether they tried to switch the minor to another school, he said, "well, we had a meeting at the school with his teacher, and he just told her 'I'm not going to go to school. I don't want to go to school. I don't want to be in that program.' So at that point in time my wife, we had to throw our hands up. We can't -- you have to go to school. So that's the law."

The juvenile court reiterated its intent to get the recent school record and a CPS referral for the minor. Father then indicated the parents could change their opinion if the minor was willing to change, but "Juvenile Hall is a good place for him because I know he'll be safe. Stockton is really dangerous."

The juvenile court asked if the minor went to school while he was in juvenile hall. Minor's counsel replied, "He's been going great," and the probation officer agreed. Counsel told the court she believed her client had no write ups in juvenile hall, but the probation officer said he had one for not keeping his room clean. The juvenile court set another hearing on the OSC and DEJ for December 20, 2012, to address the new school records.

At the beginning of the December 20, 2012, hearing, the juvenile court said it had the minor "on today for further OSC, and we have the DEJ issue was pending." Both parents were present. The juvenile court obtained contact information from both parents,

4

who had separate addresses. The juvenile court then expressed its understanding that an aunt wanted to be at the hearing, and asked the minor's counsel for what purpose. Counsel said she was unsure which aunt was there, as she expected both aunts to be present. The parents said only one of the aunts was related. The juvenile court asked the parents if the related aunt could attend. The parents said no, and the juvenile court excluded the aunt "at this time," as "we need to deal with this issue first."

The juvenile court noted it had the CPS report and asked if everyone had one. Minor's counsel said she got it this morning and had some comments about it. The juvenile court explained CPS did not feel they wanted "to get involved at this point," and asked minor's counsel for her response. Minor's counsel said she talked to her client, who told her the person who interviewed him talked to him for about 15 minutes and was not interested in what he had to say. The minor told counsel the interviewer kept saying, " 'if you just go home and do what you have to do, you wouldn't be here.' " Counsel said the report was inaccurate as it listed the father as living at the address for one of the aunts, and the phone number for him was wrong as well.

According to counsel, the parents were not separated; the father lived with the mother full time except on occasion to get a break on the lease. Regarding allegations of abuse, minor's counsel said the report was inaccurate. The CPS investigation of the allegations of abuse had been impeded by the mother, who falsely said the father did not live there.

Counsel said she knew of two relatives and a friend of the minor's family who previously cared for the minor and were willing to do so again because the minor was not being cared for at the family home. Counsel told the juvenile court that on August 22, the probation officer called on the minor at his aunt's house. According to counsel, the minor indicated several times that "he knows that his parents are sabotaging him on DEJ." The minor wants to be in an environment where he can do well, which was not at his parents' house where the father smokes marijuana and plays video games all day.

5

Counsel said the relatives and friend who had cared for the minor "are willing and able to support him and provide a much more constructive environment for him."

The prosecutor replied that the allegations from minor's counsel are more a family court matter than addressing the minor's "conduct following the orders of the Court. I guess it sounds like they want to contest it, the violation." The juvenile court said, "No, it's -- they don't get a hearing. This is a DEJ violation." The prosecutor responded, "That is what I am saying. It's like they want to contest the DEJ violation." The juvenile court asked the prosecutor if she had any further comments. The prosecutor responded, "Just that it speaks to itself. If he's not at home when he is supposed to [be home] and he is not following Court orders, it is a DEJ violation."

Minor's counsel interjected, "if he's at home and there's marijuana at the home, he's going to get violated." According to counsel, the minor told the probation officer he needed to go somewhere else to be safe, but the probation officer "forced him to go home, and this is what happened." The juvenile court told counsel, even if it assumed what she was saying about the minor's home was true, "I have three pages of school violations where he's been suspended, where he's bullying people, and he's not following dress codes, and that alone is a DEJ violation. And so what I'm going to do is I am going to lift the deferral on his DEJ. The petition is sustained."

The juvenile court indicated that for the disposition hearing, it would have the probation department look into the family problems. The court reiterated the minor was not successful on DEJ as he was "completely misbehaving at school, even if you cut out the family problem." Minor's counsel responded, "It is a function of the family problems," to which the juvenile court said, "Are you going to continue to argue with me?" Minor's counsel said, "No. I'm just commenting that I think that the school problems are a direct function of the dysfunction at his home." The juvenile court then said it had already ruled, and set a disposition hearing.

6

The disposition report said CPS reported three prior referrals: two 2010 referrals of physical abuse by the father against the sister, both unsubstantiated, and a substantiated 2002 referral for physical abuse of the minor's sister by the minor's mother. The minor had nine negative reports from staff since being booked into juvenile hall on December 9, 2012. The minor said that he would like to be released to his aunt, as his home was not really a healthy environment. The minor also said the father brings guns and drugs into the home and used to be abusive. The mother was willing to take the minor, who lived with her before removal. According to the mother, the father did not live with her, but visited often and was available when needed. The aunt indicated she was willing to take care of the minor if no one was available, but she was unwilling to overstep parental authority if they wished to care for the minor.

At the disposition hearing, the minor's counsel objected only to placing the minor under any sort of house arrest, "given the background that's previously been provided to the Court." No other matters were addressed before the juvenile court ordered disposition.

DISCUSSION

I

The minor contends the court committed prejudicial error in rescinding his DEJ without a hearing on whether DEJ should be revoked. We disagree.

Welfare and Institutions Code section 793, subdivision (a) states in pertinent part: "If it appears to the prosecuting attorney, the court, or the probation department that the minor is not performing satisfactorily in the assigned program or is not complying with the terms of the minor's probation, or that the minor is not benefiting from education, treatment, or rehabilitation, the court *shall lift* the deferred entry of judgment and schedule a dispositional hearing." (Italics added.)

According to the minor, the juvenile court focused on the statute's phrase "shall lift" and terminated his DEJ without a hearing because it "appear[ed]" to the prosecutor

7

or the probation department that the minor was not performing satisfactorily, complying with probation, or benefitting from the program. The minor contrasts this with the two other statutory grounds for terminating DEJ. Under Welfare and Institutions Code section 793, subdivision (a), the juvenile court "shall enter judgment and schedule a dispositional hearing" if a Welfare and Institutions Code section 602 petition is sustained after DEJ finds the minor committing one felony or two or more misdemeanors on separate occasions. Subdivision (a) of section 793 further provides that the juvenile court "shall enter judgment and schedule a dispositional hearing" after a subsequent sustained petition for one misdemeanor or two or more misdemeanors arising from the same occasion. According to the minor, while it makes sense to terminate DEJ after a subsequent conviction for a new offense, it is senseless to require the juvenile court to terminate DEJ "where no finding of guilt or any equivalent has occurred simply because it 'appears,' either to the court or the prosecutor or probation, that the minor is not complying with or benefiting from the DEJ program."

The minor contends Welfare and Institutions Code section 793 should be construed to require an evidentiary hearing before terminating DEJ. He additionally notes the rules of court require such a hearing.

California Rules of Court, rule 5.800(h)[2] states in pertinent part:

"(2) Before the date of the progress hearing, on the court's own motion, or if the court receives a declaration from the probation department or the prosecuting attorney alleging that the child has not complied with the conditions imposed or that the conditions are not benefiting the child, or if the child is found to have committed a felony offense or two or more misdemeanor offenses on separate occasions, the court must schedule a hearing within 10 court days. [¶] (A) At the hearing, the court must follow

_____

[2] Undesignated rule references are to the California Rules of Court.

the procedure stated in rule 5.580(d) and (e) to determine if the deferred entry of judgment should be lifted, with a disposition hearing to be conducted thereafter."[3]

The minor claims he was not accorded a hearing as required by statute and the rules of court. According to the minor, the juvenile court did not give his counsel the opportunity to show that his difficulty in complying with DEJ "were a 'function of the dysfunction at his home.' " From this, the minor concludes he "was allowed no hearing whatsoever on the question whether the juvenile court should 'lift' the DEJ."

The OSC alleged two categories of violations, failure to comply with parental authority and misbehavior at school. The juvenile court addressed both issues at the December 13 and 20 hearings. At those hearings, it interviewed the father regarding family issues, allowed the minor's counsel to raise arguments and present allegations regarding the family's alleged interference with the minor's progress on DEJ, and noted the school report documenting the minor's misbehavior. While the minor did not present evidence regarding his family and the juvenile court cut short counsel's arguments on this line, the minor was not deprived of his opportunity to contest the allegations against him or the right to have the prosecution meet its burden of proof. By ruling that the school records established a violation even assuming counsel's statement's were true, the juvenile court in effect allowed minor's counsel to make an offer of proof regarding the minor's family, but found that evidence irrelevant as to whether the minor violated the juvenile court's orders through his behavior at school.

---

[3] Rule 5.580 governs hearings on violations of juvenile probation. Rule 5.580(d) mandates a probation report absent waiver by the minor's counsel. Rule 5.580(e) requires the juvenile court to consider the probation report as well as "other relevant and material evidence offered by the parties to the proceeding," including reliable hearsay as defined in Welfare and Institutions Code section 777, subdivision (c). The prosecution must prove the alleged violation by a preponderance of evidence. (Rule 5.580(e)(2).)

It is true the juvenile court incorrectly said "they don't get a hearing. This is a DEJ violation" after the prosecutor said it appeared the minor wished to contest the matter. But that does not show a failure to terminate the DEJ without a hearing. The comment was made after the juvenile court reviewed the school records and after minor's counsel had been given an opportunity to address the subject. Immediately after the juvenile court's statement, the prosecutor noted that the minor was contesting the DEJ. Asked for further explanation, the prosecutor said the minor's failing to stay at home or follow the court's orders established the DEJ violation. Minor's counsel was again allowed to oppose the violation, asserting the minor would be violated on his DEJ if he stayed home because of the father's marijuana use, and when told of this by the minor, the probation officer forced him to go home. At this point, the juvenile court ruled that the school records established a violation even assuming the statements were true about the minor's family.

Although the hearings did not have the formalities of a trial, the juvenile court held hearings on the allegations that the minor violated his DEJ by not behaving at home and at school. At those hearings, the juvenile court took evidence and minor's counsel was able to argue her client's case. Based on the school records, the juvenile court implicitly found that the school records supported the school misbehavior allegations by a preponderance of evidence even assuming the truth of the allegations made by minor's counsel. This procedure satisfied the requirements of rule 5.800 and any statutory right to a hearing on the DEJ violation.

II

The minor contends the failure to hold a hearing violated various constitutional provisions. We reject this contention, as it relies primarily on the mistaken premise that no hearing was held.

The minor asserts terminating his DEJ without a hearing violated his right to due process. Regarding the issue of eligibility for DEJ, a minor is entitled to notice and the

10

opportunity to present evidence as a matter of due process. (*In re D.L.* (2012) 206 Cal.App.4th 1240, 1245.) The minor was informed of the allegations at the arraignment on the OSC. As we have already discussed, he was afforded the opportunity to contest the allegations in the OSC and present evidence through arguments of counsel accepted as evidentiary proof by the juvenile court. Due process requires nothing more.

The minor also claims the lack of hearing violated his Sixth Amendment right to present evidence and effective assistance of counsel. This argument has no merit as counsel was allowed to contest the claims and present evidence. The minor's final constitutional claim, that the juvenile court violated the separation of powers by terminating DEJ based on the probation officer's allegations, is similarly mistaken as it relies on the mistaken assumption that the court terminated DEJ based on the probation department's allegations, when, in fact, the ruling was based on evidence, specifically the school reports.[4]

### III

The parties identify an error in the disposition order, a document entitled "Juvenile Detention Disposition Report" prepared by the clerk.

The disposition order incorrectly says the minor admitted to the offense of receiving stolen property (§ 496, subd. (a)), but in fact, that allegation was dismissed. We will order a corrected disposition order.

### DISPOSITION

The judgment is affirmed. The juvenile court is ordered to prepare a corrected disposition order (juvenile detention disposition report) reflecting that the allegation of

---

[4] We granted the Attorney General's motion to augment the record with the minor's school records. We have reviewed the records, which document numerous disciplinary violations while the minor was on DEJ which are consistent with the allegations in the DEJ and the juvenile court's findings.

receiving stolen property (§ 496) was dismissed, and the juvenile court shall forward a certified copy of the corrected disposition order to appropriate authorities.

                                                  MAURO           , J.

We concur:

          NICHOLSON        , Acting P. J.

          ROBIE             , J.